UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

————

ALBERT REGINALD ROBINSON,

                Plaintiff,                Case No. 2:16-cv-226

v.                                    Honorable Paul L. Maloney

ADAM KANDULSKI, et al.,

                Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kandulski, Alton, McCauley, Buskirk, Turner, Lamb, Canlas, Haapala, LaPlaunt, Buchanan, Pierce, Hensen, Suriano, Unknown Party #1, Pancheri, McLean, Corizon Health Services, Woods, Killips, Thompson, Horton, and Damron. The Court will serve the complaint against Defendants Millette, Merling, Filion, Ross, Golladay, Cusick, and Benoit.

## Discussion

I.    Factual allegations

Plaintiff Albert Reginald Robinson, a state prisoner currently confined at the Kinross Correctional Facility (KCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Dr. Adam Kandulski, Nurse Sarah Alton, Health Unit Manager Susan B. McCauley, Physician's Assistant Joshua Buskirk, Nurse Charles E. Turner, Physician's Assistant Michael Millette, Nurse Theresa Merling, Nursing Supervisor Penny Filion, Nurse Patricia Lamb, Doctor Bienvenido B. Canlas, Medical Records employee H. Haapala, Health Unit Manager Melissa LaPlaunt, Nurse Practitioner Brenda Buchanan, and Eye Doctor Carolyn Pierce.  Plaintiff also sues Corrections Officers Unknown Ross, Christopher Golladay, Unknown Cusick, and Unknown Benoit, Librarians Christine Hensen and Unknown Suriano, Unknown Party #1, Counselor Unknown Pancheri, Grievance Coordinator Unknown McLean, Health Care Provider Corizon Health Services, Warden Jeffrey Woods, Corrections Officers Unknown Killips and Unknown Thompson, Assistant Deputy Warden Unknown Horton, and Nurse Joseph Damron.

In Plaintiff's complaint, he alleges that he was confined at the Saginaw Correctional Facility (SRF) from October 9, 2012, until December 4, 2013.  During his time at SRF, Plaintiff began to suffer from pain in his lower abdomen.  Plaintiff was seen by a nurse on November 15, 2012, who did nothing and charged Plaintiff a $5.00 co-pay.  Plaintiff states that he was seen by a doctor sometime between December of 2012 and May of 2013.  Plaintiff's doctor prescribed Meloxicam in May of 2013.  On May 12, 2013, Plaintiff kited health care complaining of stomach and groin pain.  On May 28, 2013, Plaintiff was seen by Defendant Kandulski, who found a "cm"

sized mass on the epididymis.  Defendant Kandulski prescribed Cipro and gave Plaintiff a printout titled "Epididymitis."

On June 18, 2013, July 17, 2013, and July 21, 2013, Plaintiff kited health care complaining of severe groin pain and bumps / sores on his "privates."  In July of 2013, Defendant Kandulski told Plaintiff that the bumps were a side effect of the Cipro and did not offer any treatment for the bumps.  Plaintiff claims that the bumps became puss filled and painful, and that they became open sores which scabbed over.

On August 24, 2013, Plaintiff developed a hernia in his lower abdomen.  By the time that Plaintiff was examined by Defendant Turner, the hernia had retracted and Defendant Turner stated that there was nothing he could do for Plaintiff.  Plaintiff's hernia reappeared on August 27, 2013, and Plaintiff was seen by Nurse Barrows, who noted that he felt lumps on Plaintiff's lower right abdomen.  Plaintiff filed a grievance complaining that he was not given any treatment for his hernia.  Plaintiff also wrote a letter to the grievance director informing her that Defendants Alton and McCauley had deleted Nurse Barrows note regarding Plaintiff's protruding hernia.  Plaintiff's request to be sent to the hospital for treatment was denied by Defendants Alton and McCauley.

In July or August, Defendant Kandulski told Plaintiff that he would give him medication for prostate issues because that might be the cause of Plaintiff's symptoms.  On September 2, 2013, Plaintiff kited health care regarding the reappearance of bumps / sores on his groin area.  On September 4, 2013, an unknown nurse told Plaintiff that the bumps were not the result of an allergic reaction and refused to give Plaintiff any treatment.  On October 8, 2013, Plaintiff had an appointment with Defendant Kandulski, but no treatment was given.  On October 29, 2013, Plaintiff kited health care to complain about his bumps / sores reappearing.  On October

-3-

31, 2013, Defendant Charles Turner examined Plaintiff and stated that his penis looked normal other than "2 pen like head flat black spots on shaft of penis." Plaintiff was not given any treatment. Plaintiff claims that the progress note falsely stated that he did not have pain, when he actually was suffering from severe pain, which was reflected in his health care kites. In October of 2013, Defendant Kandulski gave Plaintiff a rectal examination. On October 29, 2013, Plaintiff went to health care as instructed because he noticed bumps and sores, but he was refused treatment. On November 5, 2013, Defendant Buskirk examined Plaintiff and falsely noted that Plaintiff rated pain as 3 out of 10. Plaintiff states that his pain was actually a 7 out of 10. Defendant Buskirk also described the sore as a "small cluster of dried skin, flat macule, skin tag, genital wart, fordyce spots," and stated that it was unclear what the lesions were. Defendant Buskirk refused to give Plaintiff any treatment and told him to "notify health care before lesions are resolved." On November 11, 2013, Plaintiff again kited health care because of severe pain.

On December 5, 2013, Plaintiff was transferred to the Chippewa Correctional Facility (URF) as a result of all the kites and grievances he filed. During intake, Plaintiff discussed his health issues, which consisted of epididymitis, a sore back from prostate, and a hernia in his lower abdomen, with Health Care. Plaintiff claims that his request for a bottom bunk due to his health issues was denied. On January 6, 2014, Plaintiff was examined by Defendant Merling and he told her that he was in severe pain. A review of the exhibits to Plaintiff's complaint shows that Defendant Merling charted that Plaintiff had a small area that appeared to be an excoriation on the tip of his penis on the shaft. Defendant Merling noted no evidence of infection. Patient education was provided and he was told to use bacitracin and return to the medical unit in seven days for a

repeat application of medication.  *See* ECF No. 1-1, PageID.96.  Plaintiff denies being given an antibiotic ointment.

On February 24, 2014, Defendant Millette examined Plaintiff and observed sores, which Plaintiff claims were becoming a constant issue.  On March 8, 2014, Plaintiff discovered that nursing staff had been giving him double doses of his psychiatric medication, which caused Plaintiff to sleep all the time and to miss his blood pressure check.  Plaintiff filed a grievance on March 27, 2014, asserting that he was again denied triple antibiotic ointment.  Plaintiff asserts that, at this point, he had been suffering from pain for over a year and had made several attempts to obtain treatment, to no avail.  Plaintiff had been forced to pay $5.00 co-pays for each visit.  Plaintiff asked to be tested for a venereal disease, but was never tested.

On April 20, 2014, Plaintiff was moved from a cell which had a toilet, to one which did not have a toilet.  Plaintiff states that URF Health Care workers knew that he had a prostate problem, but refused to treat it, which caused Plaintiff to experience urgency and frequency of urination.  On April 30, 2014, Plaintiff received a misconduct for going to the bathroom during count, despite the fact that Plaintiff could not hold his urine due to pain.  On May 17, 2014, Plaintiff received another misconduct for being unable to hold his urine while he was on toplock.  Plaintiff claims that his prostate was so "infected and enlarged" that he had to use the bathroom every fifteen minutes, but that no diagnosis was made until October 28, 2015.  Plaintiff claims that he received seven tickets for not being able to hold his urine.

Plaintiff was being required to wait one hour to use the bathroom, which caused severe pain.  Plaintiff had several appointments with nursing staff, as well as exams by Defendant Millette, but no treatment was given.  Defendant Millette gave Plaintiff several rectal exams, but

never said that Plaintiff had an enlarged prostate.  On May 20, 2014, at 10:00 pm, Plaintiff asked

Defendant Ross if he could use the bathroom, but Defendant Ross refused stating that Plaintiff had

just used the bathroom at 8:50 pm.  Defendant Ross told Plaintiff that he had to wait two hours

before using the bathroom.  At 10:30 pm, Plaintiff told a female corrections officer that he could not

hold his urine any longer, and she ordered Plaintiff to return to his cell.  Plaintiff states that he

urinated in his pants a little before being allowed to use the bathroom.  Plaintiff also received a minor

misconduct ticket written by Defendant Ross and five days on toplock.  On May 24, 2014, Plaintiff

kited Health Care and complained of excessive co-pays for exams that did not result in any actual

treatment being given.  Defendant Filion responded to the kite by stating that there was no evidence

that Plaintiff required any treatment and that he had been advised on self care.

On June 10, 2014, Plaintiff saw Defendant Millette, who yelled that he would give

Plaintiff a post-void test to prove that there was nothing wrong with him.  Defendant Millette also

yelled that Plaintiff was wasting his time and that "every inmate that wants a f***ing detail for

bathroom can't have one." *See* ECF No. 1, PageID.15.  Defendant Millette ordered Plaintiff to leave

the office, and Plaintiff complied, leaving his book in the exam room because of haste to get away

from Defendant Millette.  Corrections Officer Eastman heard the yelling and retrieved Plaintiff's

book for him.

Plaintiff wrote a grievance on Defendant Millette, and Defendant Filion responded

to the grievance by stating that Plaintiff became argumentative when he was told that there was no

medical reason for him to have a bathroom detail.  Defendant Filion also lied and stated that Plaintiff

had argued with Corrections Officer Eastman, which Plaintiff denies.  Plaintiff states that if he had

argued with Officer Eastman, he would have received a warning or a ticket.  In addition, Officer

Eastman later told Plaintiff that he had no recollection of an altercation with Plaintiff.  On June 12, 2014, Plaintiff was called out to see Defendant Merling for a post-void residual test.  The test involved the placement of a catheter into Plaintiff after he urinated in order to determine how much urine was still in his bladder.  Defendant Merling left the catheter in place for about 30 seconds and then removed it despite the fact that Plaintiff was yelling that he could still feel urine in his bladder. Plaintiff claims that Defendant Merling rushed through the procedure in order to get a negative test result because of Plaintiff's grievance against Defendant Filion.  Plaintiff claims that as Defendant Merling was "yanking" the catheter out of Plaintiff, urine ran all over Plaintiff and he had to be cleaned up by a Nurse Assistant.

On March 7, 2015, Defendant Merling told Plaintiff that he did not have an order for ibuprofen and that he should buy it from the prisoner store.  Plaintiff claimed that he did have an active prescription, but it was refused in retaliation for his use of the grievance system.  On June 3, 2015, Plaintiff kited Health Care regarding the bumps and sores on his penis.  Plaintiff saw the nurse, who refused all treatment, including triple antibiotic ointment.  On June 26, 2015, Plaintiff was examined by Defendant Damron for pain in his right middle finger, right knee, and left and right feet arches.  Defendant Damron told Plaintiff that he had plantar fascitis and gave him an informational printout.  Defendant Damron also gave Plaintiff a handful of Tylenol and Motrin and a detail for a hot water bottle.  Defendant Damron also scheduled an appointment for Plaintiff with Defendant Canlas.  Defendant Canlas ordered x-rays of Plaintiff's right knee and left foot on June 30, 2015. Plaintiff told Defendant Canlas that the pain in his right middle finger and right foot was worse, but Defendant Canlas refused to order x-rays for his right finger and foot in a desire to retaliate against

Plaintiff for his use of the grievance system.  Defendant Canlas instructed Plaintiff to kite for a refill of his Motrin.

On August 4, 2015, Defendant Pierce gave Plaintiff an eye exam because he had been experiencing decreasing vision in his left eye.  Defendant Pierce prescribed eye drops for Plaintiff's left eye.  On February 2, 2016, Defendant tested Plaintiff's eyes and documented "no improvement with artificial tears based on TBUT test."  *See* ECF No. 1, PageID.17.  Defendant Pierce charted that Plaintiff's vision was deteriorating due to the fact that he was not using the drops as prescribed. Plaintiff asserts that although he did not use the entire contents of all four bottles, he did use the drops as directed.

On August 17, 2015, Plaintiff saw Physician's Assistant Danielle Paquette, who told him that his file indicated that he had been diagnosed with an enlarged prostate sometime in early to mid 2014 by Defendant Millette.  Plaintiff states that he had never been told of this diagnosis. Plaintiff states that this information contradicted a February 2015 grievance response by Defendant Filion, which stated that Plaintiff had a normal prostate.  On October 28, 2015, P.A. Paquette noted that Plaintiff had a history of BPH (benign prostatic hyperplasia) and complaints of frequency of urination beginning back in 2014.  She further noted that Plaintiff had never been treated with medical therapy.  During the examination, P.A. Paquette told Plaintiff that inmates who write grievances are red flagged and denied treatment.  Defendant Filion was present during the October 28, 2015, examination.  On November 13, 2015, Plaintiff received a notice of intent for refusing to sign a health care kite.  Defendant Pancheri found Plaintiff guilty and removed $5.00 from Plaintiff's account for the co-pay.

-8-

On January 24, 2016, at 9:30 am, Defendant Golladay denied Plaintiff's request to use the restroom during morning rounds. Defendant Golladay told Plaintiff he would have to wait until "the top of the hour." At the time, Plaintiff was on Flomax for a severely enlarged prostate and suffered severe pain when he had to wait to use the restroom. At 1:05 pm on the same date, Plaintiff used the bathroom on his way to lunch. At 1:20 pm, on his way back to his cell, Defendant Cusick refused Plaintiff's request to use the bathroom again. At 1:30 pm, Plaintiff asked Defendant Golladay if he could use the bathroom, explaining that he was on medication and that he had an enlarged prostate. Defendant Golladay again told Plaintiff that he would have to wait until the top of the hour. Plaintiff filed a grievance regarding this issue. On the grievance response, Defendant Pancheri falsely stated that he had interviewed Plaintiff on the grievance. On January 30, 2016, Defendant Benoit allowed Prisoner Mullaney, who is white, to use the bathroom at 12:30 pm. On January 31, 2016, at 10:30 am, Defendant Golladay let Prisoner Mullaney use the bathroom.

On February 15, 2016, at 7:30 am, Defendant Golladay again told Plaintiff that he would have to wait until the top of the hour to use the restroom, but that he could take a shower. Plaintiff alleges that having to delay using the bathroom caused him to suffer pain in his stomach. Plaintiff was finally able to use the bathroom at 8:00 am. At 8:30 am, Plaintiff overheard Defendant Golladay give permission to Prisoner Frese, who is white, to use the bathroom. At 10:30 am, Plaintiff asked to use the bathroom and Defendant Golladay stated, "you know it's the top of the hour." In February or March of 2016, Defendant Woods came to the unit and instructed Defendants Golladay, Cusick, and Benoit to stop restricting bathroom usage to "the top of the hour." But as soon as Defendant Woods left the unit, the practice continued unabated. Plaintiff claims that inmates Richard #347175, Gibbs #810512, and Humphrey #634235 can all attest to this practice, but that

they were moved off the unit.  Plaintiff claims that Defendant Woods denied dozens of grievances regarding the denial of bathroom access to Plaintiff.  Plaintiff wrote a grievance on Defendant Pancheri on February 18, 2016, that was rejected without cause by Defendant McLean.

On February 4, 2016, Plaintiff was found guilty of destruction or misuse of property, a Class II misconduct, by Hearing Officer M. LaCrosse after he was accused of failing to return a law library book by Defendant Hensen.  In the hearing report, Hearing Officer LaCrosse stated that a phone call had been made to the librarian, who confirmed that the book had never been returned:

> The Librarian's report is clear and deemed credible.  I find that the prisoner checked out the book "Hidden Witness African-American Images" from the URF library it was not returned.  Prisoner signed an acknowledgment of responsibility sheet for library materials lost, stolen, or unreturned.  Prisoner is found guilty to the charge of destruction or misuse of property and $16.99 in restitution is to be removed from prisoner's account.

See ECF No. 1-1, PageID.211.  Plaintiff claims that he did return the book.  On June 28, 2016, Plaintiff asked a prisoner library assistant to check and see of the book "Hidden Witness" was in, and the prisoner brought Plaintiff the book.  Plaintiff spoke to Supervisor Goldberg and told her that he had served three days on toplock and missed three days of work for failing to turn in "Hidden Witness."  Mrs. Goldberg told Plaintiff that the book had been turned in on February 3, 2016.  Plaintiff states that this proves that Defendant Hensen lied about the book not being present in the library on February 4, 2016.  Mrs. Goldberg told Plaintiff that she did not know why Defendant Hensen would have lied about the book not being in the library.  Plaintiff subsequently filed a grievance.

On March 7, 2016, Plaintiff placed a legal copy request form in the Marquette Unit drop box.  On March 9, 2016, Plaintiff was called out to the library.  Plaintiff expected to get his

copies, but Defendant Suriano denied having the copies.  Plaintiff filed a grievance asserting that this was the second time that he had been denied copies by the library.  In responding to the grievance, Defendant Hensen stated "this is the first time that library staff is aware of that [Plaintiff] supposedly mailed paperwork that was not received."  On April 13, 2016, Plaintiff made a copy request with the assistance of Defendant Pancheri.  The request was for copies of a letter from Defendant McLean, which served as evidence of Plaintiff's grievance regarding lack of copies.  On April 18, 2016, the request for copies, which had been ripped open, was returned to Plaintiff.  On April 19, 2016, Plaintiff asked Defendant Pancheri to call the library to inquire about the copy request.  Defendant Pancheri told Plaintiff that the library did not have his request.  Plaintiff claims that Unknown Party #1 Mail Collection Delivery Person was responsible for the collection and destruction of Plaintiff's mail, which consisted of grievances and copy requests, along with Defendants Hensen and Suriano. Plaintiff asked Defendant Pancheri who collected the mail and was told "various officers."

On May 5, 2016, Plaintiff was thirteen minutes late for his law library call out because he had to wait for two other inmates at the barber.  Plaintiff explained why he was late to Defendant Henson, who said that Plaintiff never asked her if he could get a haircut.  Plaintiff stated that he did not know he had to ask her in order to get his hair cut.  Defendant Hensen told Plaintiff that he was out of place and had to leave.  Plaintiff states that other prisoners have been allowed to stay in the law library despite being tardy if they had a legitimate reason for being late.  Plaintiff filed a grievance.  On May 19, 2016, Defendant Hensen's supervisor, Mrs. Goldberg, told Plaintiff that Defendant Hensen could have allowed Plaintiff to stay in the library despite his tardiness, and that the decision to make Plaintiff leave was entirely within Defendant Hensen's discretion.

Plaintiff kited Defendant Haapala on January 6, 2016, January 26, 2016, March 16, 2016, April 8, 2016, and April 18, 2016, in an attempt to obtain his medical records to prove that Defendant Filion lied about Plaintiff's enlarged prostate in 2015. Defendant Haapala wrote a note on the bottom of Plaintiff's record request indicating that he was unable to find an early 2014 note from P.A. Millette saying that Plaintiff had an enlarged prostate. On January 12, 2016, Defendant Canlas examined the sores on Plaintiff's penis and prescribed Betamethasone creme, but refused to diagnose the cause of the sores or to give Plaintiff antibiotics. Plaintiff filed a grievance on Defendant Haapala and Defendant Filion regarding the denial of medical records. On April 20, 2016, Defendant Filion interviewed Plaintiff on the grievance and, after talking to Defendant LaPlaunt, told Plaintiff that the requested records could not be found. Plaintiff claims that Defendants LaPlaunt, Filion, and Millette deleted the files and replaced them with a false entry asserting that Plaintiff declined a digital rectal exam on February 26, 2014. Plaintiff states that he never declined any exam or treatment and has had at least ten rectal exams in the past three years. Plaintiff continues to experience pain and, as of August 1, 2016, he was finally being diagnosed and treated for the sores on his penis with Doxycycline. Plaintiff claims that the delay in treatment has caused irreparable damage to his health.

On August 8, 2016, Plaintiff was called to health care at URF to be interviewed on a grievance he had written on Defendant Merling for interfering with Plaintiff's medical care by refusing to relay his request for a medication refill to Defendants Canlas and Buchanan. Plaintiff told Defendant Filion that if she spoke with either Defendant Canlas or Defendant Buchanan about Plaintiff's need for a refill, they would provide refills and the grievance would be resolved. Defendant Filion refused to consult with Defendant Canlas or Defendant Buchanan, and told

Plaintiff that he would have to be reevaluated and pay another $5.00 co-pay.  As Plaintiff was leaving the interview, he saw Defendant Canlas and attempted to speak to him.  However, Defendant Filion yelled, "No, don't talk to him.  Leave now."

Plaintiff claims that he was transferred to the Kinross Correctional Facility (KCF) on August 13, 2016, because of his use of the grievance system.  On August 15, 2016, Plaintiff was told that the Doxycycline did not work, and he was scheduled for an ultrasound on September 27, 2016.  Plaintiff filed a grievance regarding the alleged retaliatory transfer to KCF on August 13, 2016, by giving the grievance to Defendant McLean.  Plaintiff alleges that on September 5, 2016, Defendant McLean falsely claimed that he had never received the grievance.  Plaintiff rewrote the grievance and submitted it to Defendant McLean, who rejected it as being untimely.  A second grievance filed by Plaintiff on August 13, 2016, against Defendant Filion was improperly rejected by Defendant McLean.  Plaintiff claims that Defendant Horton refuses to investigate his grievances.

Plaintiff claims that Defendants violated his rights under the First, Eighth and Fourteenth Amendments.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

-13-

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

        Initially, the Court notes that Plaintiff filed this action on October 12, 2016.  Therefore, Plaintiff's allegations of wrongdoing that preceded October of 2013 are barred by the applicable statute of limitations.   State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261,

268-69 (1985).  For civil rights suits filed in Michigan under § 1983, the statute of limitations is

three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.

1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).

Accrual of the claim for relief, however, is a question of federal law.  *Collyer v. Darling*, 98 F.3d

211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).   The statute of

limitations begins to run when the aggrieved party knows or has reason to know of the injury that

is the basis of his action.  *Collyer*, 98 F.3d at 220.[1]  Moreover, Michigan law no longer tolls the

running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH. COMP. LAWS

§ 600.5851(9).   Further, it is well established that ignorance of the law does not warrant equitable

tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991);  *Jones v.*

*Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002

WL 1334756, at *2 (6th Cir. June 17, 2002).

      A complaint "is frivolous where it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint may be dismissed as frivolous if it is

time-barred by the appropriate statute of limitations.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508,

511 (6th Cir. 2001).  The Sixth Circuit has repeatedly held that when a meritorious affirmative

defense based upon the applicable statute of limitations is obvious from the face of the complaint,

*sua sponte* dismissal of the complaint is appropriate.  *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No.

03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute.  *Id.* at 382.

WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at

*1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5,

2000).   Accordingly, Plaintiff's claims against Defendants Alton and McCauley, which concern

conduct which occurred in August of 2013, are properly dismissed.   In addition, Plaintiff's

allegations of wrongdoing against Defendant Kandulski which occurred prior to October of 2013 are

also barred by the statute of limitations.

        Plaintiff claims that Defendants Woods and Horton violated his rights by failing to

properly investigate Plaintiff's complaints and supervise other Defendants.  Government officials

may not be held liable for the unconstitutional conduct of their subordinates under a theory of

respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of

Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed

constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532

F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of

one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to

act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir.

2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an

administrative grievance or failed to act based upon information contained in a grievance.  *See

Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Woods and

Horton engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim

against them.

-16-

The Court also notes that although Plaintiff names Corrections Officers Unknown Killips and Unknown Thompson as Defendants in this case, he fails to mention them in the body of his complaint. Because Plaintiff fails to allege any wrongdoing on the part of Defendants Killips and Thompson, they are properly dismissed from this action.

Plaintiff claims that Defendant Corizon failed to properly train and supervise its employees. Plaintiff's claim against Defendant Corizon fails because the corporation cannot be liable for its employees actions based upon a theory of respondeat superior or vicarious liability. It is well established that a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has specifically held that like a municipal corporation, a private corporation's "liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Plaintiff has pleaded no facts showing that the alleged denial of proper treatment was the result of a policy to deny prisoners medical treatment. Thus, because Defendant Corizon is not liable under a theory of respondeat superior for the individual Defendants' alleged deliberate indifference to Plaintiff's medical needs, Defendant Corizon is properly dismissed.

Plaintiff claims that Defendants Lamb, Pancheri, McLean, and Unknown Party #1 Mail / Collection Delivery violated Plaintiff's due process rights by interfering with his use of the grievance procedure. Plaintiff has no due process right to file a prison grievance. The courts

repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Lamb, Pancheri, McLean, and Unknown Party #1 Mail / Collection Delivery did not deprive him of due process.

Moreover, the actions of Defendants Lamb, Pancheri, McLean, and Unknown Party #1 Mail / Collection Delivery have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp.  8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional

grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850,  1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

Plaintiff claims that Defendants Suriano, Unknown Party #1, Hensen, and Pancheri were all involved in denying him legal copies, and that Defendant Hensen improperly ordered him to leave the library on one occasion.  Assuming that Plaintiff is seeking to assert a First Amendment access to courts claim, such a claim fails.  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively.  *Lewis v. Casey*, 518 U.S. 343 (1996).  Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*,

No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property.  *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).  Plaintiff has failed to allege any facts demonstrating that he was injured by the alleged denial of copies or by his removal from the library by Defendant Hensen.  Therefore, these claims are properly dismissed.

Plaintiff claims that Defendant Haapala violated his Fourteenth Amendment due process rights when he responded to a record request indicating that he was unable to find an early 2014 note from P.A. Millette saying that Plaintiff had an enlarged prostate.  Plaintiff alleges that he

kited Defendant Haapala on January 6, 2016, January 26, 2016, March 16, 2016, April 8, 2016, and

April 18, 2016, in an attempt to obtain his medical records to prove that Defendant Filion lied about

Plaintiff's enlarged prostate in 2015.  Defendant Haapala wrote a note on the bottom of Plaintiff's

record request indicating that he was unable to find an early 2014 note from P.A. Millette saying that

Plaintiff had an enlarged prostate.  Plaintiff's allegations fail to show any wrongdoing on the part

of Defendant Haapala, and merely show that he was unable to find the record requested by Plaintiff.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state

a claim under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007).  Because Plaintiff's conclusory claim against Defendant

Haapala is unsupported by any specific factual allegations, Defendant Haapala is properly dismissed.

Plaintiff also claims that Defendants LaPlaunt, Filion, and Millette also deleted

Defendant Millette's 2014 note from Plaintiff's medical record and substituted it with a false note

in violation of the Fourteenth Amendment.  However, Plaintiff fails to allege any specific facts in

support of this assertion.  As noted above, Plaintiff claims that on August 17, 2015, Physician's

Assistant Paquette told Plaintiff that his file indicated that he had been diagnosed with an enlarged

prostate sometime in early to mid 2014 by Defendant Millette.  Plaintiff was also seen by Defendant

Paquette on October 28, 2015, when she noted that Plaintiff had a history of BPH (benign prostatic

hyperplasia) and complaints of frequency, hesitancy, and decreased stream beginning back in 2014.

She further noted that Plaintiff had never been treated with medical therapy.  *See* ECF No. 1-1,

PageID.100-101.  During the examination, P.A. Paquette allegedly told Plaintiff that inmates who

write grievances are red flagged and denied treatment.  When Plaintiff later requested a copy of the

note diagnosing his enlarged prostate, he was told it did not exist.  Based on that response, Plaintiff

-21-

concludes that Defendants LaPlaunt, Filion, and Millette must have deleted Millette's note diagnosing him with enlarged prostate, and replaced it with a false note asserting that Plaintiff declined a digital rectal exam on February 26, 2014, which Plaintiff claimed never happened.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). In order to prevail on a due process claim related to the asserted inaccuracies in his medical record, Plaintiff must show that the inaccuracies were relied upon to a constitutionally-significant degree. *See Maiden v. Johnson*, No. 98-1479, 1999 WL 507207, at *1 (6th Cir. June 10, 1999); *Draughn v. Green*, NO. 97-1263, 1999 WL 164915, at *2 (6th Cir. March 12, 1999); *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695 (6th Cir. March 14, 1986).  In this case, Plaintiff was examined on numerous occasions.  In fact, Plaintiff states that he has had at least ten rectal exams in the past three years.  Therefore, if Plaintiff had an enlarged prostate, it would have been discovered and treated, regardless of whether there was a record of Defendant Millette making this diagnosis in February of 2014.  In addition, the Court notes that Physician's Assistant Paquette's note, dated October 28, 2015, never states that Defendant Millette actually diagnosed Plaintiff as having BPH in February of 2014, but merely notes that Plaintiff complained of symptoms which were consistent with BPH as far back as 2014.  *See* ECF No. 1-1, PageID.100-101.  Moreover, since Physician's Assistant Paquette referred to Defendant Millette's note in August of 2015, as well as Plaintiff's history of complaints in October of 2015, the alleged deletion of the note had to have occurred at some later date.  Plaintiff fails to explain how the alleged falsification of his medical records could have prevented him from receiving treatment prior to October of 2015.  Because Plaintiff has not alleged

facts showing that any inaccuracies in his medical record were relied upon to a constitutionally-significant degree, Plaintiff fails to state a claim against Defendants LaPlaunt, Filion, and Millette for a violation of his due process rights.

Plaintiff claims that numerous Defendants violated his Eighth Amendment rights by denying him appropriate medical care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in

medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

As noted above, Plaintiff alleges that Defendants LaPlaunt, Filion, and Millette deleted Millette's note diagnosing him with enlarged prostate, and replaced it with a false note asserting that Plaintiff declined a digital rectal exam on February 26, 2014, which delayed Plaintiff from getting treatment for BPH until August of 2015.  However, Plaintiff fails to allege any facts in support of his claim that any inaccuracies in his medical record resulted in a denial of treatment. Therefore, Plaintiff's Eighth Amendment claims against Defendants LaPlaunt, Filion, and Millette regarding the alleged deletion of a medical note are properly dismissed.

Plaintiff alleges that Defendants Kandulski, Turner, and Buskirk violated the Eighth Amendment while he was confined at the Saginaw Regional Correctional Facility in October of 2013.  As noted above, Plaintiff's allegations of wrongdoing that preceded October of 2013 are barred by the applicable statute of limitations.  Therefore, the Court need not review Plaintiff's claims against Defendants Kandulski, Turner, and Buskirk which arose prior to October of 2013. On October 31, 2013, Defendant Charles Turner examined Plaintiff and stated that his penis looked normal other than "2 pen like head flat black spots on shaft of penis."  Plaintiff claims that he was not given any treatment and that the progress note falsely stated that he did not have pain, when he actually was suffering from severe pain, which was reflected in his health care kites.  Plaintiff claims Defendant Kandulski never provided any treatment for prostate issues despite the fact that in July or August, Defendant Kandulski had told Plaintiff that he would give him medication for prostate issues because that might be the cause of Plaintiff's symptoms.  In October of 2013, Defendant Kandulski gave Plaintiff a rectal examination.  On October 29, 2013, Plaintiff went to health care as instructed because he noticed bumps and sores, but he was refused treatment.  However, Plaintiff fails to specify who refused him treatment.  On November 5, 2013, Defendant Buskirk examined Plaintiff and noted that Plaintiff rated pain as 3 out of 10, which actually Plaintiff rated his pain as a 7 out of 10.  Defendant Buskirk also described the sore as a "small cluster of dried skin, flat macule, skin tag, genital wart, fordyce spots," and stated that it was unclear what the lesions were. Defendant Buskirk refused to give Plaintiff any treatment and told him to "notify health care before lesions are resolved."  On November 11, 2013, Plaintiff again kited health care asserting severe pain, but Plaintiff was transferred to URF on December 5, 2013, before he was seen by health care at Saginaw.

-26-

It is clear from Plaintiff's allegations that he was seen on multiple occasions by Defendant medical professionals at the Saginaw Regional Correctional Facility.  Plaintiff alleges that he was examined by Defendants Kandulski, Turner, and Buskirk , but that they were not sure what was causing his symptoms, which included subjective assertions of pain and bumps and sores on his penis.  The Court concludes that Plaintiff's allegations constitute, at worst, medical malpractice, and do not rise to the level of an Eighth Amendment violation.  Therefore, Plaintiff's Eighth Amendment claims against Defendants Kandulski, Turner, and Buskirk are properly dismissed.

Plaintiff names Joseph Damron as a defendant in this case.  As noted above, Plaintiff claims that on June 26, 2015, Plaintiff saw Defendant Damron for complaints of pain in his right middle finger, right knee, and left and right feet arches.  Defendant Damron told Plaintiff that he had plantar fascitis and gave him an informational printout.  Defendant Damron also gave Plaintiff a handful of Tylenol and Motrin and a detail for a hot water bottle, and scheduled an appointment for Plaintiff with Defendant Canlas.  The Court concludes that Plaintiff's allegations against Defendant Damron do not support an Eighth Amendment claim.  Therefore, Defendant Damron is properly dismissed from this action.

Plaintiff further claims that his Eighth Amendment rights were violated by Defendants Canlas, Buchanan, and Pierce.  Plaintiff alleges that Defendant Canlas refused to order x-rays for his right finger and foot, despite Plaintiff's complaints of pain in those areas, and instead ordered x-rays of Plaintiff's right knee and left foot on June 30, 2015.  Plaintiff also claims that on January 12, 2016, Defendant Canlas examined the sores on Plaintiff's penis and prescribed Betamethasone creme, but refused to diagnose the cause of the sores or to give Plaintiff antibiotics. Plaintiff claims that on August 4, 2015, Defendant Pierce prescribed eye drops for Plaintiff's left eye

because he had been experiencing decreasing vision in that eye.  On February 2, 2016, Defendant

Pierce charted that Plaintiff's vision was deteriorating due to the fact that he was not using the drops

as prescribed.  It is clear from Plaintiff's complaint that Defendants Canlas and Pierce both provided

Plaintiff with treatment for various ailments.  As noted above, the fact that Plaintiff disagreed with

the diagnosis and treatment by Defendants Canlas and Pierce does not rise to the level of an Eighth

Amendment violation.  Moreover, Plaintiff fails to allege any misconduct on behalf of Defendant

Buchanan.  Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims against

Defendants Canlas, Buchanan, and Pierce.

Plaintiff claims that Defendants Canlas and Hensen retaliated against him for his use

of the grievance procedure in violation of the First Amendment.  The filing of grievances is

constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation.  *Shehee*

*v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). In order to set forth a First Amendment retaliation

claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action

was taken against him that would deter a person of ordinary firmness from engaging in that conduct;

and (3) the adverse action was motivated, in least in part, by the protected conduct.  *Thaddeus-X v.*

*Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  Moreover, Plaintiff must be able to prove that

the exercise of the protected right was a substantial or motivating factor in the defendant's alleged

retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount*

*Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Temporal proximity "may be 'significant enough to constitute indirect evidence of

a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379

F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).

However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added).  Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough."  Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

As noted above, Plaintiff alleges that Defendant Canlas refused to order x-rays for his right finger and foot, despite Plaintiff's complaints of pain in those areas, and instead ordered x-rays of Plaintiff's right knee and left foot.  Plaintiff claims that this was motivated by a desire to retaliate against him for filing grievances.  The Court notes that Plaintiff fails to allege any specific facts showing that Defendant Canlas' decision to order x-rays for some areas of Plaintiff's body, but not for others, was based on anything other than Defendant Canlas' assessment of medical necessity.  Because Plaintiff's claim that Defendant Canlas' conduct was retaliatory is entirely conclusory, it is properly dismissed.

Plaintiff claims that Defendant Hensen ejected him from the library for being late and wrote a false misconduct ticket on him for allegedly stealing a book.  If true, Defendant Hensen's conduct is unprofessional and reprehensible.  However, Plaintiff fails to allege any facts showing that

this conduct was taken in response to Plaintiff's use of the grievance system.  Because Plaintiff's claim that Defendant Hensen was motivated by a desire to retaliate against him for his use of the grievance procedure lacks any specific factual support, this claim is properly dismissed.

Plaintiff claims that Defendants Millette, Merling, and Filion conspired to deprive him of medical care in violation of his rights under the First and Eighth Amendments.  As noted above, Plaintiff claims that Defendants Millette and Merling also violated his rights under the Eighth Amendment by failing to provide him with appropriate treatment for his symptoms.  Plaintiff claims that Defendant Millette examined him on numerous occasions, but failed to diagnose or treat his BPH.  Plaintiff alleges that on February 24, 2014, Defendant Millette examined Plaintiff and observed sores, which Plaintiff claims were becoming a constant issue.  Defendant Millette gave Plaintiff several rectal exams, but never told Plaintiff that he had an enlarged prostate.  On June 10, 2014, Defendant Millette yelled at Plaintiff, stating that he would give Plaintiff a post-void test to prove that there was nothing wrong with him.  Defendant Millette also yelled that Plaintiff was wasting his time and that "every inmate that wants a f***ing detail for bathroom can't have one." *See* ECF No. 1, PageID.15.  Defendant Millette did order a post-void test, which was performed by Defendant Merling.  Plaintiff claims that Defendant Merling conspired with Defendant Millette to sabotage the test by pulling the catheter out after a few seconds before it had a chance to actually empty the contents of Plaintiff's bladder.  Plaintiff claims that prevented him from receiving treatment for his condition until August of 2015, which resulted in needless pain and suffering.  In addition, Plaintiff claims that Defendant Filion prevented Plaintiff from obtaining a refill for his medication on August 8, 2016, by preventing him from talking to Defendant Canlas or Defendant Buchanan.  Plaintiff claims that when he asked Physician's Assistant Paquette why he had not been

treated for enlarged prostate on a previous date, she told him that prisoner who file grievances are red flagged and are denied care.  The Court concludes that Plaintiff's claims that Defendants Millette, Merling, and Filion conspired to deny Plaintiff needed medical care in retaliation for filing grievances is not clearly frivolous and may not be dismissed on initial review.

Plaintiff's claim that Defendants Ross, Golladay, Cusick, and Benoit denied him and other black prisoners the use of the bathroom except at the "top of the hour," but let white prisoners use the bathroom at any time.  Plaintiff claims that he was denied bathroom usage on multiple occasions, despite the fact that he had been diagnosed as having an enlarged prostate, which caused him to suffer needless pain and to urinate on himself on at least one occasion.  The Court concludes that Plaintiff's claims that Defendants Ross, Golladay, Cusick, and Benoit violated his right to equal protection and to be free from cruel and unusual punishment are not clearly frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kandulski, Alton, McCauley, Buskirk, Turner, Lamb, Canlas, Haapala, LaPlaunt, Buchanan, Pierce, Hensen, Suriano, Unknown Party #1, Pancheri, McLean, Corizon Health Services, Woods, Killips, Thompson, Horton, and Damron will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The

Court will serve the complaint against Defendants Millette, Merling, Filion, Ross, Golladay, Cusick, and Benoit.

An Order consistent with this Opinion will be entered.


Dated:  April 5, 2017                              /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge