UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALBERT REGINALD ROBINSON,

        Plaintiff,        Case No. 2:16-cv-226

v.        HON. PAUL L. MALONEY

ADAM KANDULSKI, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by state prisoner Albert Reginald Robinson pursuant to 42 U.S.C. § 1983. The remaining claims in this case are against Defendants Millette, Merling, Filion, Ross, Golladay, Cusick, and Benoit. Plaintiff alleges that Defendants Millette, Merling, and Filion conspired to deny him medical care for his enlarged prostate, and that Defendants Ross, Golladay, Cusick, and Benoit denied him the use of the bathroom due to his race except at the "top of the hour." Plaintiff asserts that white prisoners could use the bathroom at any time. Defendants Merling, Filion, Ross, Golladay, Cusick, and Benoit filed a motion for summary judgment (ECF No. 31) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 40). Defendant Michael Millette filed a motion for summary judgment (ECF No. 69). Plaintiff filed a response (ECF No. 80). Defendant Millette filed a reply (ECF No. 86). Plaintiff has filed a "motion for physical examination and treatment" (ECF No. 39). Defendants have filed a response (ECF No. 48).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007).  A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for

the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id.* at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendants Merling, Gollady, Cusick, and Benoit concede that Plaintiff exhausted claims that each of these Defendants denied him the use of the bathroom. Defendants Filion and Ross assert that Plaintiff never exhausted his claims against them. Plaintiff argues that URF 1608-2836-12F (ECF No. 40, PageID.811-813) exhausted claims against Defendants Merling and Filion. Defendant Merling has conceded that claims were exhausted against him in this grievance. However, Defendant Filion merely interviewed Plaintiff on this grievance and responded to the grievance. Plaintiff did not grieve Defendant Filion's conduct in that grievance. In the opinion of the undersigned, grievance URF 1608-2836-12F did not exhaust any claims asserted against Defendant Filion.

Plaintiff argues that grievance URF 1608-2938-28J was improperly rejected as untimely. Plaintiff asserts that this grievance exhausted his claims against Defendant Filion. (ECF No. 40-2, ECF No. 814-815). Plaintiff's grievance was rejected at Step II and Step III. In the opinion of the undersigned, Plaintiff failed to properly exhaust this grievance by following the MDOC grievance procedures. The Sixth Circuit's opinion in *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011) is instructive. The Court decided:

> Here, the grievance was rejected under the procedural rule on timely filing at the first step, improperly rejected under another procedural rule at the second step, and rejected on the merits at the third step. We determine whether this constitutes proper exhaustion by

6

> reference to habeas doctrine. *See id.* at 325. *Reed–Bey* states that in habeas cases, " 'a procedural default does not bar consideration of a federal claim ... unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,' or it is otherwise clear they did not evaluate the claim on the merits." *Id.* (quoting *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Here, the Step III response (the equivalent of the last state court in habeas) did not "clearly and expressly" state that Reynolds–Bey's fifth grievance was being rejected on procedural grounds. Rather, it mentioned the procedural bases for the Step I and II decisions and then rested its determination on the substantive ground that "[d]ismissals/not guilty findings in major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff." (R. 32–4 at 6.) Therefore, we find that Grievance OTF 05–03–00153–28E was exhausted for purposes of the PLRA.

*Id*. at 502.

In this case, the Step III response clearly states that Plaintiff's grievance was rejected due to his failure to comply with the procedural rule that requires him to timely appeal to the next step of the grievance process. In the opinion of the undersigned, *Reynolds-Bey v. Harris* makes it clear that where a Step III response rejects a grievance for failing to follow MDOC grievance procedure, the grievance cannot be considered properly exhausted under the policy.

Plaintiff argues that he exhausted his claims against Defendant Ross. Plaintiff filed URF 1405-1634 27A naming Defendant Ross at Step I regarding his denial of bathroom use allegations. (ECF No. 40-2, PageID.817-819). In his Step I grievance, Plaintiff challenged decisions made during misconduct hearings. Plaintiff's grievance was rejected because his grievance was "directly related to the hearing process and therefore is non grievable." Plaintiff appealed his misconduct violations as directed in the Step I grievance response specifically naming Defendant Ross. (PageID.821-822). In the opinion of the undersigned, Plaintiff exhausted his claims against Defendant Ross, because the MDOC found Plaintiff's claims were non-grievable and, alternatively, Plaintiff appealed his misconduct convictions specifically naming Defendant

7

Ross as directed by the Step I response. There was nothing more that Plaintiff could do, according to the Step I response, to exhaust his claims against Defendant Ross. In the opinion of the undersigned, Plaintiff exhausted his claims against Defendant Ross.

Defendant Millette argues that he did not violate Plaintiff's Eighth Amendment rights by failing to diagnose and treat Plaintiff's benign prostatic hyperplasia (BPH) and did not violate Plaintiff's First Amendment rights by conspiring with Defendant Merling to sabotage a post void test. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the

detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

9

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Defendant Millette has presented Plaintiff's medical records for the time period between June 10, 2014, and September 17, 2017. Plaintiff asserts that the records are incomplete and that he was actually first examined by Defendant Millette on January 13, 2014, regarding sores and communicable disease. Plaintiff claims that Defendant Millette refused to treat him. Plaintiff asserts that Defendant Millette gave him a digital rectal exam on February 26, 2014, and found that Plaintiff had an enlarged prostate, but never informed him of this condition and never treated him

for it.  Plaintiff asserts that he was never provided with these medical records and when he requested them from the prison he was told that they did not exist.[2]

Defendant PA Millette examined Plaintiff on June 10, 2014, for complaints of ongoing urinary problems.  (ECF. No. 71-1, PageID.1123-1125). Defendant Millette noted that Plaintiff's last examination was in November of 2013 found no infection and that his most recent rectal examination was normal.  PA Millette ordered post-void residual testing and lab studies for a urine culture and urinalysis.   PA Millette recommended Kegal exercises to help with detrussor muscles dealing with the bladder.  Plaintiff became angry when PA Millette informed him that he did not have a medical need for a bathroom pass.   Defendant Merling provided Plaintiff with the post void residual test on June 12, 2014.  (PageID.1126). Plaintiff complained that he still felt "urine in there."

On August 25, 2014, Defendant PA Millette saw Plaintiff for a follow-up examination due to multiple complaints of urinary/genital area discomfort, pain, and rashes. (PageID.1127-1129). Plaintiff's prior urine tests were negative with no finding of infection.   PA Millette found no hernia, normal penile function, except for a small non-cancerous spermatocele on the left testicle.  Plaintiff was instructed to continue to take Motrin and blood tests were ordered.

On February 25, 2015, Plaintiff was examined by Dr. Pascual Sevilla-Moya for a six month follow-up.  (PageID.1130-1134). Dr. Sevilla-Moya conducted an annual health screen. He noted normal genitourinary function with no masses or tenderness.   Plaintiff's rectal examination was normal.  Blood tests were ordered.  Dr. Jeffrey Bomber completed a chart review

---

[2] Plaintiff states that there exists a conspiracy to deny him medical records.  Counsel for Defendant Millette has indicated that she does not have records that go back to February of 2014, but only has records from April 1, 2014. She explains that although discovery has closed, if Plaintiff signed a release for the medical records, Defendant would obtain the records and supplement the record.  Defendant asserts "that there exists no issue of material fact regarding the February 26, 2014, exam" because the records establish that Defendant Millette did not violate any of Plaintiff's rights.

11

on March 4, 2015, noting that Plaintiff requested Motrin, but did not mention any pain at his February 25, 2015, examination. Plaintiff was instructed to kite medical staff. (PageID.113). Defendant PA Millette ordered Motrin for Plaintiff on March 16, 2015, after conducting a chart review. (PageID.1137). Defendant PA Millette had no further involvement with Plaintiff's medical care.

On August 17, 2015, PA Danielle Paquette examined Plaintiff. Plaintiff complained of groin pain, frequency and urgency of urination, including the need to urinate 3 times during the night, and weakened stream. PA Paquette discussed clinical features and treatment of BPH and Plaintiff wanted to try the medication. (PageID.1138-1140). Plaintiff was prescribed Flomax. On October 28, 2015, Plaintiff was examined by PA Paquette. Plaintiff reported that the Flomax was not working and that he continued to have problems. (PageID.1141-1143). PA Paquette found that Plaintiff had an enlarged prostate to 2+. She ordered laboratory tests and referred Plaintiff to a medical provider. Plaintiff was treated with Flomax without relief and started on Cipro. (PageID.1146). A prostate biopsy was ordered by the urologist. (PageID.1146, 1149).

Plaintiff reported on December 23, 2015, that he was not obtaining relief from the medication he received to treat BPH symptoms. (PageID.1151). Plaintiff prostate examination showed that it was enlarged to 4+. A biopsy was conducted on February 29, 2016 (PageID.1162-1166). The results of the biopsy showed benign tissue. (PageID.1167). A scrotal ultrasound was negative. (PageID.1183). Plaintiff continued treatment with other medical providers, but his symptoms persisted.

Plaintiff asserts that the medical records are incomplete and that Defendant PA Millette examined Plaintiff in January of 2014, and discovered that Plaintiff had an enlarged prostate but did not treat the condition. The record does not support Plaintiff's claim that he had

an enlarged prostate any time prior to February 25, 2015, when Dr. Sevilla-Moya indicated that Plaintiff's "Prostate appears normal." (PageID.1133). On October 28, 2015, PA Paquette found that Plaintiff's prostate was twice the size of normal and on December of 2015, PA Paquette found that Plaintiff's prostate had grown four times the normal size.

In the opinion of the undersigned, the record does not support Plaintiff's claim that Defendant Millette acted with deliberate indifference by failing to treat Plaintiff's condition. Plaintiff did not present with an enlarged prostate while being treated by Defendant Millette. Defendant Millette examined Plaintiff and ordered appropriate laboratory tests. Plaintiff has failed to show that Defendant Millette violated any of Plaintiff's rights.

Plaintiff asserts that Defendant Millette violated his First Amendment rights by conspiring with Defendant Merling to sabatoge his post void test. Defendant Millette ordered that test. There exists no evidence to support Plaintiff's claim of conspiracy or that the test was sabotaged. In the opinion of the undersigned, Plaintiff's conspiracy and First Amendment claims are not factually supportable.

Plaintiff has requested that the Court order a physical examination and treatment for his enlargement prostate at a facility that is not associated the MDOC. Plaintiff believes that he is unable to receive proper treatment for his condition at the prison. Plaintiff's motion requests injunctive relief. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.

> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to Plaintiff's claim that he is being denied medical care at the prison in violation of his Eighth Amendment rights. Plaintiff has failed to show that any medical professional has acted with deliberate indifference toward Plaintiff's medical needs. Furthermore, Plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an

injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here. Because Plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that Plaintiff's motion for a physical examination and treatment be denied.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 31) be denied as to Defendants Merling, Ross, Golladay, Cusick, and Benoit. It is recommended that the motion be granted against Defendant Filion wthout prejudice due to Plaintiff's failure to exhaust administrative remedies against Defendant Filion.

It is further recommended that Defendant Millette's motion for summary judgment (ECF. No. 69) be granted, dismissing Defendant Millette with prejudice.

It is further recommended that Plaintiff's motion for a physical examination and treatment (ECF No. 39) be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 18, 2018

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).