UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALBERT REGINALD ROBINSON,

        Plaintiff,                    Case No. 2:16-cv-226

v.                                         HON. PAUL L. MALONEY

ADAM KANDULSKI, et al.,

        Defendants.

_____/

REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Albert Reginald Robinson pursuant to 42 U.S.C. § 1983. Plaintiff was confined at the Chippewa Correctional Facility (URF) at the time of events alleged in the complaint. The remaining claims are against Defendants Merling, Filion, Ross, Golladay, Cusick, and Benoit.  Plaintiff alleges that Defendants Merling, and Filion conspired to deny him medical care for his enlarged prostate, benign prostatic hyperplasia (BPH), and that Defendants Ross, Golladay, Cusick, and Benoit denied him the use of the bathroom except at the "top of the hour" due to his race, in retaliation, and in violation of his Eighth Amendment rights.  Plaintiff asserts that white prisoners could use the bathroom at any time.  Defendants Merling, Filion, Ross, Golladay, Cusick, and Benoit filed a motion for summary judgment (ECF No. 138).  Plaintiff filed responses (ECF Nos. 142-145).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).   If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then

the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that Defendants nurse Filion and nurse Merling denied him appropriate medical treatment and care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

- 3 -

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully

inadequate as to amount to no treatment at all.'"   *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff's medical records were discussed in the Report and Recommendation dated January 18, 2018.   (ECF No. 92).   Plaintiff's prostate appeared normal during a February 25, 2015, medical examination.   By August 15, 2015, Plaintiff's prostate was twice the size of normal and by December of 2015, his prostate had enlarged to four times the size of normal.

> Defendant PA Millette examined Plaintiff on June 10, 2014, for complaints of ongoing urinary problems. (ECF. No. 71-1, PageID.1123-1125). Defendant Millette noted that Plaintiff's last examination was in November of 2013 found no infection and that his most recent rectal examination was normal.  PA Millette ordered post-void residual testing and lab studies for a urine culture and urinalysis.   PA Millette recommended Kegal exercises to help with detrussor muscles dealing with the bladder.   Plaintiff became angry when PA Millette informed him that he did not have a medical need for a bathroom pass.    Defendant Merling provided Plaintiff with the post void residual test on June 12, 2014. (PageID.1126). Plaintiff complained that he still felt "urine in there."
>
> On August 25, 2014, Defendant PA Millette saw Plaintiff for a follow-up examination due to multiple complaints of urinary/genital area discomfort, pain, and rashes.   (PageID.1127-1129). Plaintiff's prior urine tests were negative with no finding of infection.    PA Millette found no hernia, normal penile function, except for a small non-cancerous spermatocele on the left testicle.   Plaintiff was instructed to continue to take Motrin and blood tests were ordered.
>
> On February 25, 2015, Plaintiff was examined by Dr. Pascual Sevilla-Moya for a six month follow-up.   (PageID.1130-1134). Dr. Sevilla-Moya conducted an annual health screen.   He noted normal genitourinary function with no masses or tenderness. Plaintiff's rectal examination was normal.   Blood tests were ordered.   Dr. Jeffrey Bomber completed a chart review on March 4, 2015, noting that Plaintiff requested Motrin, but did not mention any pain at his February 25, 2015, examination.   Plaintiff was instructed to kite medical staff.   (PageID.113). Defendant PA Millette ordered Motrin for Plaintiff on March 16, 2015, after conducting a chart review.   (PageID.1137). Defendant PA Millette had no further involvement with Plaintiff's medical care.

On August 17, 2015, PA Danielle Paquette examined Plaintiff. Plaintiff complained of groin pain, frequency and urgency of urination, including the need to urinate 3 times during the night, and weakened stream. PA Paquette discussed clinical features and treatment of BPH and Plaintiff wanted to try the medication. (PageID.1138-1140). Plaintiff was prescribed Flomax. On October 28, 2015, Plaintiff was examined by PA Paquette. Plaintiff reported that the Flomax was not working and that he continued to have problems. (PageID.1141-1143). PA Paquette found that Plaintiff had an enlarged prostate to 2+. She ordered laboratory tests and referred Plaintiff to a medical provider. Plaintiff was treated with Flomax without relief and started on Cipro. (PageID.1146). A prostate biopsy was ordered by the urologist. (PageID.1146, 1149).

Plaintiff reported on December 23, 2015, that he was not obtaining relief from the medication he received to treat BPH symptoms. (PageID.1151). Plaintiff prostate examination showed that it was enlarged to 4+. A biopsy was conducted on February 29, 2016 (PageID.1162-1166). The results of the biopsy showed benign tissue. (PageID.1167). A scrotal ultrasound was negative. (PageID.1183). Plaintiff continued treatment with other medical providers, but his symptoms persisted.

Plaintiff asserts that the medical records are incomplete and that Defendant PA Millette examined Plaintiff in January of 2014, and discovered that Plaintiff had an enlarged prostate but did not treat the condition. The record does not support Plaintiff's claim that he had an enlarged prostate any time prior to February 25, 2015, when Dr. Sevilla-Moya indicated that Plaintiff's "Prostate appears normal." (PageID.1133). On October 28, 2015, PA Paquette found that Plaintiff's prostate was twice the size of normal and on December of 2015, PA Paquette found that Plaintiff's prostate had grown four times the normal size.

In the opinion of the undersigned, the record does not support Plaintiff's claim that Defendant Millette acted with deliberate indifference by failing to treat Plaintiff's condition. Plaintiff did not present with an enlarged prostate while being treated by Defendant Millette. Defendant Millette examined Plaintiff and ordered appropriate laboratory tests. Plaintiff has failed to show that Defendant Millette violated any of Plaintiff's rights.

Plaintiff asserts that Defendant Millette violated his First Amendment rights by conspiring with Defendant Merling to

>sabatoge his post void test.   Defendant Millette ordered that test. There exists no evidence to support Plaintiff's claim of conspiracy or that the test was sabotaged.   In the opinion of the undersigned, Plaintiff's conspiracy and First Amendment claims are not factually supportable.

(ECF No. 92, PageID.1323-1325).   In the opinion dated March 6, 2018, the Court rejected Plaintiff's claim that he had been diagnosed with BPH at any time before February 25, 2015, when his prostrate was examined and revealed no evidence of enlargement. (ECF No. 113, PageID.1453).   Similarly, the Court rejected Plaintiff's claim that Defendant Merling sabotaged a post void test by removing the catheter after only a few seconds.   *Id*.

In the opinion of the undersigned, Plaintiff has failed to show that any Defendant acted with deliberate indifference towards Plaintiff's serious medical needs. The medical record establishes that Plaintiff was provided with extensive medical care and treatment.   Plaintiff's assertion that he disagrees with his diagnosis and treatment is not sufficient to establish that Defendants Filion or Merling violated his Eighth Amendment rights.   Similarly, Plaintiff's assertion that Defendants Filion and Merling violated his First Amendment rights by refusing him medical care is not supported by facts in the record.   In the opinion of the undersigned, Defendants Filion and Merling are entitled to dismissal.

Plaintiff alleges that his enlarged prostate caused him to frequently urinate. Plaintiff states that on several occasions Defendants denied his request to use the restroom facilities at the prison. When Plaintiff was sanctioned for a misconduct, he was placed on top lock status. While on top lock status, Plaintiff was required to request the use of restroom facilities.   Plaintiff alleges that while residing in the Marquette Unit of URF, he was frequently denied restroom use while on top lock status.   Plaintiff alleges that Defendant Benoit denied a request to use the restroom while Plaintiff was on top lock status on February 15, 2016, at 10:30 a.m..   Plaintiff

alleges that Defendant Benoit allowed white prisoners to use the restroom every 30 minutes, but only allowed African American prisoners to use the restroom once per hour. In addition, Plaintiff alleges that Defendant Benoit denied his request to the use the restroom six more times prior to February 15, 2016.

Plaintiff alleges that on January 24, 2016, he requested to use the restroom at approximately 1:20 p.m., but Defendant Cusick would not allow him to use the facility until 2:00 p.m. Plaintiff alleges that Defendant Cusick denied him the use of restroom facilities on three other occasions. On January 24, 2016, Defendant Cusick issued Plaintiff a misconduct violation for disobeying a direct order. Plaintiff was found guilty of that misconduct by the hearing officer. Plaintiff alleges that Defendant Cusick allowed white prisoners to use the restroom every 30 minutes but would not afford the same opportunity to African American prisoners.

Plaintiff alleges that Defendant Golladay denied him access to the restroom on January 24, 2016, and February 15, 2016. Plaintiff asserts that Defendant Golladay allowed white prisoners to use the restroom every 30 minutes and allowed African American prisoners to use the restroom once every hour. Similarly, Plaintiff states that Defendant Ross denied his request to use the restroom on May 20, 2014, while he was confined in the Lime Unit. Plaintiff asserts that Defendant Ross allowed white prisoners to access the restroom more often than African American prisoners.

Plaintiff asserts that the denial of restroom use violated his Eighth Amendment rights. Defendants do not deny Plaintiff's claim that they each denied him the opportunity to use the restroom at the time Plaintiff made his request. Rather, Defendants argue that they are each entitled to qualified immunity on Plaintiff's Eighth Amendment claims because the denial of restroom use for a limited time period could not have violated clearly established law.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions

fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The one-time denial of Plaintiff's request to leave the Day Room to use the toilet is insufficient, by itself, to state a claim under the Eighth Amendment. *See Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir. 1987)). Defendants rely on *McNeal v. Knott*, 590 Fed. Appx. 566 (6th Cir. November 4, 2014) to support their qualified immunity argument. In *McNeal* the Sixth Circuit upheld summary judgment based upon qualified immunity where a prisoner complained that he was denied use of the restroom during daily prison count on some occasions. In that case, prisoner *McNeal* alleged that he needed to use the restroom three times per hour due to an enlarged prostate. Plaintiff was offered incontinence pads but refused them. The Sixth Circuit found that neither "controlling authority" or "a robust consensus of cases of persuasive authority impose liability on prison officials who denied bathroom privileges to inmates under similar conditions." *Id*. at 569. In addition to *Dellis* and *Hartsfield*, the Sixth Circuit cited *Simpson v. Overton*, 79 F. App'x 117, 119-20 (6th Cir. 2003), granting qualified immunity to prison officials who allegedly forced an inmate on several occasions to urinate on himself, despite his enlarged prostate condition which required him to urinate three or four times per hour, because no conceivable facts could establish that Defendants acted with deliberate indifference to Plaintiff's medical needs. The Plaintiff in *Simpson* had rejected the use of a "urinal bottle."

Plaintiff alleges a limited number of instances when his requests to immediately use the restroom facility were denied and he was required to wait between 30 to 60 minutes before he could use the restroom. In at least one reported instance, Plaintiff was told to wait approximately 10 minutes. (ECF No. 145-1, PageID.1714). Plaintiff has presented facts that are no different than the circumstances presented in both *McNeal* and *Simpson*. Accordingly, as in *McNeal* and *Simpson*, it is recommended that the Court find that Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims.

Plaintiff asserts that his requests to use the restroom were denied in retaliation for his grievances. The filing of grievances is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, *Muhammad* does

not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).   Plaintiff has simply made conclusory assertions that Defendants denied or delayed his restroom use due to his grievance filings.    Plaintiff has presented no evidence to connect the Defendants conduct to his grievance filings. Plaintiff has simply made a conclusion without any factual basis in support.    In the opinion of the undersigned, Plaintiff has failed to support a causal connection due to his grievance filings or any retaliatory motive on behalf of a Defendant.

Plaintiff asserts that Defendants violated equal protection by restricting African American prisoner's use of the restroom to one time per hour while allowing white prisoners to use the restroom every 30 minutes.   Plaintiff asserts that he was limited to "top of the hour" restroom restrictions.   Defendants deny that a "top of the hour" policy exists at the prison. Plaintiff has indicated that the policy is unwritten and applied by Defendants. Plaintiff has asserted that Defendants Gollady and Benoit let two white prisoners use the restroom outside of the "top of the hour" restriction at times when Plaintiff did not make a request to use the restroom. Plaintiff asserts that when he made requests to use the restroom he could use the restroom only at "top of the hour."

In the opinion of the undersigned, Plaintiff's allegation of discriminatory treatment is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440. Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that the two white prisoners who were allowed to use the restroom at time when Plaintiff never requested to use the restroom were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. To be a similarly-situated person member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). In the opinion of the undersigned, Plaintiff has failed to show that Defendants denied him immediate restroom use due to his race.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is

recommended that Defendant's Motion for Summary Judgment (ECF No. 138) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: January ___, 2019

                                                                                            _____
                                                                                            TIMOTHY P. GREELEY
                                                                                            UNITED STATES MAGISTRATE JUDGE